1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

MARTHA ANGELINGA ROSALES,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

Defendant.

Case No.  CV 16-05873-RAO

**MEMORANDUM OPINION AND ORDER**

## I.    INTRODUCTION

Plaintiff Martha Angelina Rosales ("Plaintiff") challenges the Commissioner's denial of her application for a period of disability and supplemental security income ("SSI").  For the reasons stated below, the decision of the Commissioner is REVERSED.

## II.    PROCEEDINGS BELOW

On January 27, 2012, Plaintiff filed an application for SSI, alleging disability beginning September 1, 2008.  (Administrative Record ("AR") 64-65, 76.)  Her application was denied initially on June 22, 2012, and upon reconsideration on January 25, 2013.  (AR 99, 107.)  On March 25, 2013, Plaintiff filed a written

request for hearing, and a hearing was held on August 20, 2014.[1]  (AR 50, 113.)
Represented by counsel, Plaintiff appeared and testified, along with a medical
expert and an impartial vocational expert.  (AR 52-63.)  On September 25, 2014,
the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a
disability, pursuant to the Social Security Act,[2] since January 27, 2012.  (AR 33-
34.)  The ALJ's decision became the Commissioner's final decision when the
Appeals Council denied Plaintiff's request for review.  (AR 1-4.)  Plaintiff filed this
action on August 5, 2016.  (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether
Plaintiff was disabled under the Social Security Act.  *Lester v. Chater*, 81 F.3d 821,
828 n.5 (9th Cir. 1995).  At **step one**, the ALJ found that Plaintiff had not engaged
in substantial gainful activity since January 27, 2012, the application date.  (AR
28.)  At **step two**, the ALJ found that Plaintiff has the following severe
impairments: bipolar disorder and mood disorder.  (*Id*.)  At **step three**, the ALJ
found that Plaintiff "does not have an impairment or combination of impairments
that meets or medically equals the severity of one of the listed impairments in 20
CFR Part 404, Subpart P, Appendix 1."  (*Id.*)

Before proceeding to step four, the ALJ found that Plaintiff has the residual
functional capacity ("RFC") to:

> [P]erform a full range of work at all exertional levels but with the
> following nonexertional limitations: she can stand and walk for no
> more than six of eight hours, cumulatively; can sit for no more than
> six of eight hours, cumulatively; can understand and remember tasks,
> sustain concentration and persistence for unskilled jobs with simple

[1] An initial hearing was held on May 6, 2014, where Plaintiff began testifying.  (AR
39-49.)  Because the medical expert did not receive all of the exhibits, the parties
returned for another hearing at a later date.  (AR 47-49.)

[2] Persons are "disabled" for purposes of receiving Social Security benefits if they
are unable to engage in any substantial gainful activity owing to a physical or
mental impairment expected to result in death, or which has lasted or is expected to
last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

instructions; can socially interact with the general public; and can adapt to workplace changes in low-stress environments.

(AR 29.)

At **step four**, the ALJ found that Plaintiff has no past relevant work. (AR 32.) At **step five**, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity," the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (AR 33.) Accordingly, the ALJ determined that Plaintiff has not been under a disability since the application date. (*Id.*)

## III.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV.    DISCUSSION

Plaintiff raises four issues for review: (1) whether the Appeals Council failed to evaluate new and material evidence submitted on appeal; (2) whether the ALJ erred in evaluating physician opinions; (3) whether the ALJ erred in determining severe impairments; and (4) whether the ALJ erred in determining Plaintiff's RFC. (Joint Stipulation ("JS") 3, Dkt. No. 21.)   Plaintiff contends that the Appeals Council failed to explain its rejection of the additional evidence, the ALJ failed to properly consider and weigh physician opinion evidence, the ALJ failed to explain why impairments were deemed non-severe, and the ALJ failed to consider all of Plaintiff's symptoms and limitations in formulating her RFC.  (JS 3, 12, 37, 46.) The Commissioner disagrees.  (*See* JS 5-10, 26-35, 41-42, 47-49.)  For the reasons below, the Court agrees with Plaintiff regarding the opinion evidence and remands on that ground.

### A.    The ALJ Erred in Evaluating Physician Opinions

Plaintiff contends that the ALJ failed to properly assign weight to opinion evidence and failed to provide sufficient reasons for rejecting the opinions of treating physicians.  (*See* JS 12.)   The Commissioner contends that the ALJ properly assessed the opinion evidence.  (*See* JS 25-26.)

#### 1.    Applicable Legal Standard

Courts give varying degrees of deference to medical opinions based on the provider: (1) treating physicians who examine and treat; (2) examining physicians

4

who examine, but do not treat; and (3) non-examining physicians who do not examine or treat. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). Most often, the opinion of a treating physician is given greater weight than the opinion of a non-treating physician, and the opinion of an examining physician is given greater weight than the opinion of a non-examining physician. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

The ALJ must provide "clear and convincing" reasons to reject the ultimate conclusions of a treating or examining physician. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Lester*, 81 F.3d at 830-31. When a treating or examining physician's opinion is contradicted by another opinion, the ALJ may reject it only by providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 633; *Lester*, 81 F.3d at 830; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). A non-examining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record and is consistent with it. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (citation omitted).

Other non-medical sources may also provide opinions and testimony regarding a claimant's symptoms or the effects of a claimant's impairments on his or her ability to work. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). The ALJ must take this evidence into account, unless the ALJ "expressly determines to disregard such testimony, in which case 'he must give reasons that are germane to each witness.'" *Id.* (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)); *see Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Because such testimony is competent
///

evidence, it "*cannot* be disregarded without comment." *Nguyen*, 100 F.3d at 1467 (emphasis in original).

## 2. Discussion

The ALJ gave "great evidentiary weight" to the testimony of medical expert Margaret Nichols, Ph.D., and gave "[m]oderate evidentiary weight" to the conclusions in the Disability Determination Explanations, finding the testimony and conclusions consistent with the treatment records. (AR 31-32.) The ALJ assigned "little evidentiary weight" to Plaintiff's very low Global Assessment of Functioning ("GAF") score because it was "apparently chiefly based on the claimant's self-reported symptoms, and not the benign objective mental status examination results." (AR 31.) The ALJ also discussed other medical opinions and evidence in the record without assigning them weight or expressly crediting or rejecting them. (*See* AR 30-32.)

### a. Medical Expert Margaret Nichols, Ph.D.

At the hearing, Dr. Nichols testified via telephone about whether Plaintiff's symptoms met a listed impairment. (*See* AR 55-59.) In considering Listing 12.04, Dr. Nichols determined that Plaintiff met the listing's criteria of decreased energy, but not suicidal thoughts. (AR 56-57.) Dr. Nichols also concluded that Plaintiff's mood disorder could cause her to miss work, but "not at the level of severity that [Dr. Nichols] saw documented in the record." (AR 57.) Dr. Nichols did not see any indication that there would be periods of time with fluctuations of days off, or days on which Plaintiff would not call in for work. (*Id.*) The ALJ granted Dr. Nichols's testimony "great evidentiary weight," finding it consistent with treatment and examination evidence. (AR 31.) The ALJ is permitted to rely on a non-examining physician's opinion when it is supported by and consistent with other evidence in the record. *See Morgan*, 169 F.3d at 600.

However, for the reasons discussed below, the ALJ nonetheless erred in assigning Dr. Nichols's opinion great evidentiary weight without first properly

rejecting the conflicting opinions of Plaintiff's treating and examining physicians. *See Lester*, 81 F.3d at 830; *Carmickle*, 533 F.3d at 1164 (a treating or examining physician's opinion may be rejected in favor of another contradictory opinion only with specific and legitimate reasons supported by substantial evidence).

### b. Treating Psychologist Ernest Rasyidi, M.D.

Dr. Rasyidi completed a Mental Disorder Questionnaire Form on October 29, 2012. (AR 466-70.) Dr. Rasyidi noted that Plaintiff reported nightmares, worries, isolation, increased startle response, and hypervigilance. (AR 466.) Dr. Rasyidi also noted Plaintiff's reported "periods of depressed mood lasting up to 2wks at a time with 'hyper' periods" that included restlessness, irritability, racing thoughts, insomnia, mood swings, and impulsive manic episodes that include hitting walls and breaking cups. (*Id.*) Dr. Rasyidi noted that Plaintiff is "generally anxious/irritable with intense/constricted range of emotions," and that Plaintiff has racing thoughts that impair her concentration. (AR 467.) Dr. Rasyidi noted that Plaintiff has "labile, aggressive, impulsive behaviors" and a "[h]ighly reactive and labile mood with alternation between anger and crying." (AR 468.)

Regarding Plaintiff's level of functioning and daily activities, Dr. Rasyidi stated that Plaintiff "requires intensive case management services" to help manage her childcare and logistic planning, and Plaintiff has "poor attention to nutrition" to the point that she was briefly hospitalized for dehydration. (AR 468.) Dr. Rasyidi noted that Plaintiff had "limited socialization" and was "[h]ypervigilant and mistrustful after trauma." (AR 469.) Dr. Rasyidi noted that Plaintiff was "intermittently house bound" due to a fear of unfamiliar scenarios. (*Id.*)

Dr. Rasyidi reported Plaintiff's diagnosis of posttraumatic stress disorder ("PTSD") and bipolar NOS. (AR 470.) Dr. Rasyidi also reported a "guarded" prognosis, noting that Plaintiff was "fairly refractory despite intensive therapy." (AR 470.) Dr. Rasyidi opined that no significant change was likely in the next twelve months. (*Id.*)

The ALJ's entire discussion of Dr. Rasyidi's opinion is reduced to one sentence in which the ALJ notes that Dr. Rasyidi "repeated the claimant's complaints and endorsements."[3] (AR 31.) An opinion that is based on a claimant's discredited subjective complaints may be rejected.[4] *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). Here, to the extent that Dr. Rasyidi did clearly "repeat[] the claimant's complaints and endorsements," it was in response to the question, "What are the patient's complaints and symptoms? How and when did they begin? How does the patient describe complaints (verbatim quotes)?" (AR 466.) The ALJ wholly fails to discuss any other part of Dr. Rasyidi's opinion. The degree to which the ALJ discredited Dr. Rasyidi's opinion is unclear, as the ALJ did not assign any weight to Dr. Rasyidi's opinion, nor did he expressly reject it.

The Commissioner contends that the ALJ properly dismissed Dr. Rasyidi's opinion because it was contradicted by state agency physicians and a medical expert, and it was not supported by objective medical evidence. (JS 28-31.) But those were not reasons that the ALJ provided, and the Court may not consider grounds upon which the ALJ did not rely. *See Orn*, 495 F.3d at 630; *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post

---

[3] The ALJ erroneously referred to Dr. Rasyidi as Dr. Rasslkjlij.

[4] The ALJ found that Plaintiff was "only partially credible." (AR 32.) Plaintiff does not challenge the ALJ's adverse credibility finding, and thus that issue is not before this Court. *See Guith v. Berryhill*, No. 1:16-CV-00625 GSA, 2017 WL 4038105, at *8 (E.D. Cal. Sept. 13, 2017) (citing *Carmickle v. Commissioner*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008)) ("Plaintiff has not contested the ALJ's credibility determination and therefore, he has waived that argument.").

8

hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

The Court finds that the ALJ failed to properly consider and weigh Dr. Rasyidi's opinion. *See Garrison*, 759 F.3d at 1012-13 ("Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." (internal citation omitted)).

### c. Therapist Gina Louhisdon, MA, MFTI

Ms. Louhisdon wrote a letter on October 5, 2010 that documented her treatment history with Plaintiff. (AR 335-36.) Ms. Louhisdon noted that Plaintiff began treatment at the Santa Clarita Child and Family Center in August 2008, and Ms. Louhisdon had met with Plaintiff for 82 therapy sessions. (AR 335.) Ms. Louhisdon repeated Plaintiff's reported symptoms and listed the primary focuses of her treatment plan. (*Id.*) After noting that Plaintiff reports difficulty with functioning at home and in social settings, Ms. Louhisdon suggested that "[t]his could be due to her paranoid ideation." (AR 336.) Ms. Louhisdon attributed Plaintiff's inability to become employed to Plaintiff's anxiety symptoms and paranoid ideation, which causes Plaintiff to be easily overwhelmed, and her struggles with daily self-care. (*Id.*) Ms. Louhisdon noted that Plaintiff "doesn't cope well with stress and may become reactive in the workplace" if faced with too much stress or too many demands. (*Id.*) Ms. Louhisdon also noted that Plaintiff tends to procrastinate and has difficulty with follow-through. (*Id.*) Ms. Louhisdon concluded that Plaintiff's lack of work history is due to her functional impairments and, despite consistent treatment, Plaintiff's "prognosis is poor." (*Id.*) Plaintiff's diagnosis was reported as bipolar and chronic post-traumatic stress disorder. (*Id.*)

Ms. Louhisdon submitted another letter on June 5, 2012 that noted that she had then seen Plaintiff for 117 therapy sessions, but this letter was otherwise nearly identical to the October 5, 2010 letter. (AR 463-64.)

A therapist is a nonmedical "other source," and therefore a therapist's opinion may be discounted if the ALJ provides germane reasons for doing so. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). When discussing Ms. Louhisdon's opinions, the ALJ noted:

> The claimant's long-term counselor also endorsed the claimant's assertions, and the form was cross-signed by a psychologist whose relationship with the claimant is unknown [citation]. The therapist states that she has seen claimant 117 times. Notes include only August 2012 through July 2013 and are minimal.

(AR 31.)

An opinion or testimony that merely repeats a claimant's discredited complaints may be rejected. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). However, in addition to Ms. Louhisdon's repetition of Plaintiff's assertions, the letter provides additional opinions and conclusions, which the ALJ did not acknowledge. (*See* AR 336, 464.) Additionally, the ALJ seemingly mischaracterizes Plaintiff's treatment records. The records provided by Child and Family Center are Plaintiff's Annual Assessment Updates (AR 445-47, 448-50) and Client Care Coordination Plans (AR 451-55, 456-62). These Updates and Plans, which include records from July 2011, do not purport to document individual treatment sessions (*see* AR 453-55). *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify his conclusion).

The ALJ erred in failing to consider Ms. Louhisdon's opinion evidence without "expressly determin[ing] to disregard" it and providing germane reasons for doing so. *Sprague*, 812 F.2d at 1232; *see Nguyen*, 100 F.3d at 1467.

### d. Consultative Examiner William Goldsmith, M.D.

Dr. Goldsmith provided a psychiatric evaluation of Plaintiff in May 2012. (AR 438-42.) Dr. Goldsmith noted that Plaintiff's post-traumatic stress disorder was due to a year-long abusive relationship. (AR 438.) Plaintiff reported depressed

periods with suicidal thoughts and homicidal thoughts toward her children. (*Id.*) Dr. Goldsmith observed that Plaintiff's thought process was "organized and intact," and her thought content was "without gross delusional thinking." (AR 440.) Dr. Goldsmith assigned Plaintiff a GAF score of 60, noted that Plaintiff has symptoms of PTSD, and opined that she may have a bipolar II disorder. (AR 441.) He also noted that Plaintiff "seems to be doing better" than was reported in October 2010 records. (*Id.*) Dr. Goldsmith found that Plaintiff could understand, remember, and carry out simple one- or two-step instructions; was slightly impaired in her ability to follow detailed and complex instructions; was moderately impaired in her ability to relate and interact with supervisors, coworkers, and the public; could maintain concentration, attention, persistence, and pace; was moderately impaired in her ability to associate with day-to-day work activity, including attendance and safety; was slightly impaired in her ability to adapt to common work stresses; could maintain regular attendance and consistently perform work activities; and was able to perform work activities without special or additional supervision. (AR 442.)

The ALJ accurately summarized Dr. Goldsmith's opinion; however, the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for seemingly rejecting Dr. Goldsmith's opinion in favor of the non-examining medical expert's conflicting opinion. After summarizing Dr. Goldsmith's report, the ALJ provided no reasons for accepting or rejecting his opinion, and the ALJ did not assign it any degree of weight. (*See* AR 30.)

The Court finds that the ALJ failed to properly consider and weigh Dr. Goldsmith's opinion. *See Carmickle*, 533 F.3d at 1164 (an examining physician's contradicted opinion may be rejected with "specific and legitimate reasons that are supported by substantial evidence in the record"); *Garrison*, 759 F.3d at 1012-13 (an ALJ errs when he fails to set forth specific, legitimate reasons for crediting one medical opinion over another).

///

### e. Records from AV Wellness Center

The ALJ noted that Plaintiff was diagnosed with social phobia and PTSD after an April 2013 assessment at AV Wellness Center. (AR 31; *see* AR 491.) The ALJ also noted that Plaintiff's level of functioning continued at about the same level through 2014. (*Id.*) Plaintiff argues that the ALJ "never specifically addressed" the records from Alfred Mathew Fogarty, M.D., or AV Wellness Center and "failed to afford any weight . . . [or] articulate any reasoning for rejecting these opinion[s] and records." (JS 18.)

The Court finds that the ALJ's summary of the objective medical records is accurate. Treatment notes indicate that Plaintiff's diagnosis remained the same from April 2013 to January 2014. (AR 518-22, 524-31.) Progress notes from therapy sessions with Elizabeth Marsh, LCSW, are objective and repeat Plaintiff's assertions. (AR 499-517.)

However, the ALJ failed to acknowledge Dr. Fogarty's August 14, 2014 opinion that Plaintiff has a medically verifiable impairment that limits her abilities to perform tasks and affects her ability to work. (*See* AR 564.) Although the ALJ read Dr. Fogarty's statement at the hearing (AR 53-54), it does not appear that the ALJ gave it any consideration in his opinion. As Dr. Fogarty was a treating physician, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence when rejecting his opinion. *See Lingenfelter*, 504 F.3d at 1038 n.10 (an ALJ may not "avoid the [] requirements" of providing specific and legitimate reasons for rejecting a doctor's opinion "simply by not mentioning the treating physician's opinion"); *see also Garrison*, 759 F.3d at 1012-13 (citing *Nguyen*, 100 F.3d at 1464) ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

### f. Records from Penny Lane Center

The ALJ noted that in a January 2014 assessment performed at a Penny Lane Center, Plaintiff was assigned a GAF score of 32, "which is consistent with custodial care." (AR 31.) The ALJ set forth a summary of the findings from the evaluation and determined that the GAF score "does not match the objective mental testing of the same date." (*Id.*) The ALJ also observed that Plaintiff "subjectively endorsed a wide variety of severe symptoms." (*Id.*) The ALJ gave the assessment's conclusion of a very low GAF score "little evidentiary weight" because it appeared to be "chiefly based on the claimant's self-reported symptoms, and not the benign objective mental status examination results." (*Id.*)

Plaintiff argues that the ALJ failed to discuss the full report that accompanied the GAF score. (JS 21.) However, the ALJ summarized the contents of the assessment, which merely documented Plaintiff's own reported symptoms and contained no third-party opinions. (AR 31; *see* AR 549-51.) Plaintiff also argues that the ALJ failed to discuss additional reports from March through April 2014 (JS 21), but the ALJ noted that Plaintiff "continued to be treated through the springtime of 2014" (AR 31).

The ALJ properly considered this objective medical evidence, and the ALJ's assignment of "little evidentiary weight" to the assessment's GAF conclusion is supported by substantial evidence. *See Reddick*, 157 F.3d at 725 (an ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings").

Although the ALJ properly considered the disputed objective medical evidence, it is unclear whether the ALJ properly considered the opinion evidence in accordance with the appropriate legal standards. Remand is therefore warranted for the ALJ to properly evaluate the opinion evidence and determine Plaintiff's RFC.

///

## B.    The Court Declines to Address Plaintiff's Remaining Arguments

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments that the Appeals Council failed to evaluate new evidence, that the ALJ erred in determining Plaintiff's severe impairments, and that the ALJ erred in formulating Plaintiff's RFC.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## C.    Remand For Further Administrative Proceedings

Because further administrative review could remedy the ALJ's errors, remand for further administrative proceedings, rather than an award of benefits, is warranted here.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remanding for an award of benefits is appropriate in rare circumstances).  Before ordering remand for an award of benefits, three requirements must be met:  (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.  *Id.* (citations omitted).  Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."  *Id.* (citation omitted).

Here, remand for further administrative proceedings is appropriate.  The Court finds that the ALJ failed to provide legally adequate reasons to reject the

opinions of Dr. Rasyidi, Ms. Louhisdon, Dr. Goldsmith, and Dr. Fogarty.

On remand, the ALJ shall reassess the opinions Plaintiff's treating and examining physicians and other sources, and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects. Further on remand, the ALJ shall reassess Plaintiff's subjective allegations in light of Social Security Ruling 16-3p—Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 (S.S.A. Mar. 16, 2016), which would apply on remand. If necessary, the ALJ shall reassess Plaintiff's RFC, and then proceed through steps four and five to determine what work, if any, Plaintiff is capable of performing.

## V.     **CONCLUSION**

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: December 29, 2017       _____

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**